# IN THE U.S. DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JAMES SMITH, Individually, and purportedly on behalf of All Others,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY,<br><br>And<br><br>AMERICAN DETECTIVE SERVICES, INC.,<br><br>    Defendants. | Cause No.: 2:22-CV-4115<br><br>Removed from the Circuit Court of Cole County, Missouri, Case No. 22AC-CC01832 |

## NOTICE OF REMOVAL OF CLASS ACTION

COMES NOW Defendant Scottsdale Insurance Company ("Scottsdale"), by and through the undersigned counsel, pursuant to 28 U.S.C. § 1441, §1446, and § 1453 and files this Notice of Removal of the above lawsuit, originally filed in the Circuit Court of Cole County, State of Missouri, and in support of its Notice of Removal, hereby states as follows:

## TABLE OF CONTENTS

Introduction………………………………………………………………………………………..1

Parties……………………………………………………………………………………………...2

Factual and Procedural Background……………………………………………………………….2

Argument………………………………………………………………………………………….6

I.    Applicable Legal Standard for Removal under CAFA. …………………………………..6

II.   Smith's Garnishment Action is a "Class Action" under CAFA. ………………………….7

III.  Minimal Diversity is Present………………………………………………………………9

IV.       The Amount in Controversy Exceeds $5 million..…………………………………9

Conclusion……………………………………………………………………………………….14

Certificate of Service………………………………………………………………………….15

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Bryers*, 512 S.W.3d 17 (Mo. 2016)…………………………………………..13

*Cleartrac, LLC v. Lanrick Contractors, LLC*, 432 F. Supp. 3d 648 (E.D. La. 2020)…………...12

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014)……………………….9

*Farmers Ins. Co. v. McClain*, 603 F.2d 821 (10th Cir. 1979)……………………………………...12

*Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743 (2019)…………………………………....9

*Peraton Gov't Commc'ns, Inc. v. Hawaii Pac. Teleport L.P.*, No. CV 20-00287 JMS-WRP, 2021
      WL 767854 (D. Haw. Feb. 26, 2021)………………………………………………12

*Perez v. Foremost Ins. Co*., 2018 WL 2473573 (W.D.N.Y. June 4, 2018)………………………...12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)…………………………………………...8

*Pirozzi v. Massage Envy Franchising, LLC*, 938 f.3D 981 (8th Cir. 2019)……………………..10

*Raskas v. Johnson & Johnson*, 719 F.3d 884 (8th Cir. 2013)……………..........................6

*Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)…………..11

*Snider v. State Farm Mut. Auto. Ins. Co.*, 360 F. Supp. 929(S.D.W. Va. 1973)………………...12

*Waters v. Ferrara Candy Co.*, 873 F.3d 633 (8th Cir. 2017)…………………………………….10

*Waters v. Home Depot USA, Inc*., 446 F. Supp. 3d 484 (E.D. Mo. 2020)……………………….10

*Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891 (8th Cir. 2017)………………………………..7-8

**Statutes and Court Rules**

15 U.S.C. § 1681b……………………………………………………………………………….2

28 U.S.C. § 1332……………………………………………………………………7, 9, 11-12

28 U.S.C. § 1446……………………………………………………………………………10

28 U.S.C. § 1453…………………………………………………………………………..1, 6

RSMo. § 537.065……………………………………………………………………….1, 3, 4

**Treatises**

Wright & Miller, *Interest and Costs*, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.)…………12

## INTRODUCTION

1. Plaintiff Smith filed this equitable garnishment action in Cole County, Missouri, seeking to recover for an underlying class action judgment issued by the Circuit Court of Clinton County, Missouri, against Defendant American Detective Services ("ADS"). Plaintiff claims Scottsdale failed to provide a defense to ADS for the underlying class action claims under the policies ADS had with Scottsdale. So, Plaintiff and ADS entered into a non-execution covenant under RSMo. § 537.065, proceeded to purportedly arbitrate class claims of more than 22,000 people under the Fair Credit Reporting Act (though the absent class members did not have arbitration agreements and appear to have never even been provided notice), and obtained a judgment confirming this arbitration award in excess of $54 million plus 9.0% post-award interest.

2. This case is removable under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1453. Removal is proper under CAFA if the matter: (1) is a class action involving 100 or more people; (2) involves "minimal diversity"; and (3) if the amount in controversy exceeds $5 million. Those elements are satisfied.

3. Under binding Eighth Circuit precedent in *Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891 (8th Cir. 2017), this is a removable "class action" under CAFA involving more than 100 claimants. Plaintiff Smith is only before this Court seeking to recover under this judgment because he obtained it in the capacity of a purported class representative of more than 22,000 people pursuant to Missouri Rule 52.08, the analogue to Rule 23.

4. There is minimal diversity. Plaintiff is a citizen of Missouri. Scottsdale is a citizen of Ohio. ADS is a citizen of North Carolina. All parties are diverse.

5. The amount in controversy is satisfied. The underlying judgment confirmed a purported class action arbitration award of more than $54 million plus 9.0% post-award interest

1

per annum. Further, the judgment encompassed purported class members with claims from November 2015 to October 2019. This implicates five policy periods and, thus, each claim limits totaling $5 million. Further, because the post-award interest relates to an underlying lawsuit (rather than the present equitable garnishment action) it must be included in the calculation of the amount in controversy.

## PARTIES

6. Scottsdale is an insurance company incorporated, organized, and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio, and it is therefore a corporate resident and citizen of the State of Ohio.

7. Defendant American Detective Services ("ADS") is an incorporated company existing under the laws of the State of North Carolina, with its principal place of business in the State of North Carolina. Therefore, ADS is a corporate resident and citizen of the State of North Carolina.

8. Plaintiff James Smith is an individual who, upon information and belief, is a resident and citizen of the State of Missouri.

## FACTUAL AND PROCEDURAL BACKGROUND

9. On November 23, 2020, Plaintiff Smith filed a putative class action lawsuit with Case No. 20CN-CC00069 in the Circuit Court of Clinton County, Missouri, "on behalf of all similarly situation individuals" alleging three putative classes "suffered statutory damages under the FCRA when the Defendant failed to comply with the requirements of 15 U.S.C. § 1681b(b)(1), 15 U.S.C. § 1681b(b)(3), and 15 U.S.C. § 1681k, which entitled him and the putative classes to statutory and punitive damages per 15 U.S.C. §1681n." (Ex. A, State Court File, Petition, ¶ 8).

10. During the fifteen months that the claims were pending in case number 20CN-CC00069, the Court record does not show that any written discovery was served, nor were any depositions taken. There also are no court appearances or hearings reflected in the records. Most notably, there was no determination or order by the Court that the case could be maintained as a class action pursuant to Missouri Rule 52.08 (whether for settlement or litigation purposes), nor was notice provided by the Court to potential class members as required by to Rule 52.08(c)(2). (*See* Exhibit B, 20CN-CC00069 Docket).

11. Instead, on February 28, 2022, Plaintiff voluntarily dismissed his claims, and the claims of the purported classes, in their entirety without prejudice. This came on the heels of Plaintiff Smith and Defendant ADS entering into a non-execution agreement under RSMo. § 537.065. To date, Scottsdale has not been furnished with a copy of this non-execution agreement.

12. On or around February 10, 2022, Plaintiff Smith and Defendant ADS purportedly "entered into an agreement to arbitrate" their dispute. (Exhibit C, Arbitration Agreement). Upon information and belief, other than Plaintiff Smith, none of the other putative "class members" had arbitration agreements with Defendant ADS. Nevertheless, Plaintiff Smith purportedly entered the arbitration agreement "individually and on behalf of all others." *Id*. The arbitration agreement was signed by plaintiff James Smith only, and he is the only claimant named in the agreement. *Id.*

13. Less than one month later, on March 4, 2022, Plaintiff and Defendant ADS reportedly submitted their dispute to "binding arbitration" before arbitrator Miles Sweeney under "Alaris' Arbitration Rules." (Exhibit D, Arbitration Award). On April 4, 2022, the Arbitrator issued his Arbitration Award. *Id*. at 1. In so doing, the Arbitrator purported to *simultaneously* grant Plaintiff Smith's request to certify a class of more the 22,000 people pursuant to Missouri Rule 52.08 *and* enter a damages award for more than $54 million plus "post-award interest in the amount

3

of 9% from the date of this award." (*Id*. at 6-16). This "class" purportedly encompassed claims from "the period from November 15, 2015, through October 31, 2019." (*Id*. at 5).

14. On April 13, 2022, Plaintiff Smith filed a petition to confirm the arbitration award in the Circuit Court of Clinton County, which included a proposed judgment. (Exhibit F, Docket Sheet for Case No. 22CN-CC00019). The next day, the Court signed the proposed judgment confirming the arbitration award. (Exhibit E, April 14, 2022 Judgment). The judgment provided:

> "The Court incorporates the arbitrator's award into this judgment and this judgment constitutes the final judgment of the Court. The Court further orders that interest on the award shall run at 9% per annum as ordered in the award and shall be calculated as running from the date of the award."

(Ex. E, ¶ 8).

15. Plaintiff Smith and Defendant ADS did not provide Scottsdale notice of this arbitration award, the newly-filed lawsuit seeking confirmation of the arbitration award, or the judgment confirming the award. Instead, Scottsdale discovered this on Missouri's Case Net.

16. On May 5, 2022, Scottsdale moved to intervene and file a motion to vacate the arbitration award and judgment. Scottsdale argued it had a statutory right to intervene under RSMo. § 537.065, that it otherwise had sufficient interest to intervene as a matter of right, and that the court should permissively allow intervention. (Exhibit G, Scottsdale's Motion to Intervene in 22CN-CC00019). In the motion to vacate, Scottsdale argued, *inter alia*: (1) that judgment had to be vacated under § 537.065 because Scottsdale was not given a copy of the non-execution agreement; (2) the arbitrator exceeded his authority because the putative class members were not party to an arbitration agreement with Defendant ADS; and (3) the arbitration award and judgment violated due process because the absent class members were given no notice, no opportunity to opt-out, and the court's order did nothing to oversee class counsel's handling of funds recovered for the class. (Exhibit H, Scottsdale's Motion to Vacate filed in Clinton County, Missouri).

4

17. On May 12, 2022—just before the April 14, 2022, judgment would become final—counsel for Scottsdale called up its motion to intervene in the Circuit Court of Clinton County. Counsel for Plaintiff and ADS did not appear because they stated they were unavailable. The court did not rule on the motion to intervene, but instead entered an order setting aside the April 14 judgment and reopening the matter "for additional evidence on June 2, 2022" pursuant to Missouri Supreme Court Rule 75.01. (Ex. F). On June 2, 2022, the court took up and denied Scottsdale's motion to intervene, and further ordered its April 14 judgment reinstated. (Ex. F). Scottsdale has timely appealed this order and judgment to the Missouri Court of Appeals.

18. On June 7, 2022, Plaintiff Smith filed the present action for equitable garnishment under RSMo. § 379.200 in the Circuit Court of Cole County. Scottsdale was served with the summons and lawsuit for this action on July 5, 2022. This notice of removal is timely.

19. Plaintiff alleges the Errors and Omissions portion of Scottsdale's policy provides coverage to ADS for the underlying state court judgment. Plaintiff alleges that Scottsdale insured ADS under policy number of CPS3062449 with a policy limit of $1,000,000.00. (Ex. A, Petition, ¶ 12). However, the arbitrator's finding (adopted by the judgment) that the class included a period from November of 2015 to October 2019 implicates five separate policy periods for insurance policies issued by Scottsdale to ADS. Those include: (a) June 1, 2015, to June 1, 2016; (b) June 1, 2016, to June 1, 2017; (c) June 1, 2017, to June 1, 2018; (d) June 1, 2018, to June 1, 2019 (the specific period referenced by Smith in his state court petition); and (e) June 1, 2019, to June 1, 2020.

20. Subject to certain terms, provisions, definitions, limitations, and exclusions, the Policies across these periods provide errors and omissions coverage with an each claim limit of liability of $1,000,000.00 and a general aggregate limit of liability of $2,000,000. Thus,

5

collectively the actually involved total $5,000,000 in each claim limits. In addition, each of the policies have the following supplementary payments provision providing for the payment of post-judgment interest:

> **SUPPLEMENTARY PAYMENTS**
>
> We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend: …
>
> **5.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

(*See* Doc. 1 from Case No. 5:22-cv-06049-NKL currently pending before this Court, Insurance Policies attached to Scottsdale's Declaratory Judgment Action, specifically Doc. 1: Ex. A thereto, pg. 42; Ex. B thereto, pg. 32; Ex. C thereto, pg. 32; Ex. D thereto, pg. 44; Ex. E thereto, pg. 43).

21. On May 4, 2022, Scottsdale filed a complaint for declaratory judgment with this Court requesting a declaration and judgment declaring no coverage is available to Defendant ADS under these policies. That matter remains pending. *See* Case No. 5:22-cv-06049-NKL.

### ARGUMENT

### V. Applicable Legal Standard for Removal under CAFA.

22. CAFA confers federal jurisdiction over class actions when "1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy is at least $5 million in the aggregate." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 886 (8th Cir. 2013). A class action meeting these requirements may be removed to federal court. 28 U.S.C. § 1453(b). Other defendants need not consent to removal under CAFA. *Id.*

23. This case is removable under CAFA because: (1) it is a "class action" involving more than 100 class members under binding Eighth Circuit precedent in *Williams*; (2) minimal diversity is present; and (3) the amount in controversy exceeds $5 million. *See Williams*, 845 F.3d

at 898-902 (holding that because plaintiff "brought this action on behalf of a class previously certified under a state-law analogue to Rule 23, the action was necessarily 'filed under' Rule 23 or a state-law analogue" for purposes of removal.)

## VI.     Smith's Garnishment Action is a "Class Action" under CAFA.

24.     Section 1332(d)(1) defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." CAFA envisions liberal removal rules to effectuate its purposes, which the Eighth Circuit has consistently applied in its rulings on the statute. "In enacting CAFA, Congress expressed concern about lawyers who 'game' the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests." *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). "Thus, Congress emphasized that 'class action' should be 'interpreted liberally.'" *Id*. "Generally speaking, lawsuits that resemble a purported class action should be considered class actions for purposes of applying [CAFA]." *Id*.

25.     The Eighth Circuit has already held that an equitable garnishment action seeking to recover for an underlying class action judgment against an insurer is a "class action" removable under CAFA. In *Williams*, a class of residents of Autumn Hills sued Collier for allegedly contaminated drinking water. *Williams*, 845 F.3d at 894-95. Collier demanded defense and indemnity from multiple insurers, each of whom declined. *Id*. at 895. Like here, Collier entered into a non-execution agreement with the class, whereby the class representative "agreed that if the class obtained judgment against Collier, the class' recovery would be limited to those insurance

7

proceeds." *Id*. The state court found the class suffered bodily injury and property damage due to the contamination and awarded more than $80 million.

26. Like here, the class representative in *Williams* filed an equitable garnishment action against the insurers in state court. *Id*. The insurers removed to the Eastern District of Missouri. *Id*. The class representative filed a motion to remand, arguing an equitable garnishment action was not a "class action" under CAFA. *Id*. The district court disagreed and denied remand. After the district court granted the insurers' motion for judgment on the pleadings, the class representative appealed to the Eighth Circuit challenging the district court's jurisdiction. *Id*. On appeal, the class representative in *Williams* argued that "an action is 'filed under' Rule 23 or a state-law analogue only where the complaint expressly invokes such a rule." *Id*. at 899. The Eighth Circuit disagreed, noting that the equitable garnishment statute does not independently authorize plaintiffs to bring suit on behalf of others. Rather, a plaintiff must rely on the class action mechanism of Missouri Rule 52.08 or Rule 23 to proceed as a collective. Thus, the Eighth Circuit reasoned "it is clear from the pleadings that Williams can bring this case only because of her status as the representative of the class certified under Rule 52.08, an undisputed analogue of Rule 23." *Id*. at 900. "[A]lthough the complaint omits reference to Rule 52.08, it is clear from the face of the complaint that Rule 52.08 is the precise rule under which Williams proceeds in her effort to enforce the judgment obtained for the benefit of the class." *Id*. at 901. Thus, the Court held the equitable garnishment action was a "class action for purposes of CAFA jurisdiction." *Id*.

27. Here, like *Williams*, Plaintiff Smith filed class action FCRA claims "individually and as class representative" against Defendant ADS. (Ex. A, Petition, ¶¶ 7-8). After entering into a non-execution agreement, Plaintiff and ADS proceeded to arbitration.[1] The arbitrator purportedly

---

[1] Scottsdale disputes the legitimacy of this arbitration because the putative class members did not have arbitration agreements with Defendant ADS. The Circuit Court forced thousands of people to have their claims arbitrated without

certified a class of approximately 22,000 people across the country under Missouri Rule 52.08 and entered an award of more than $54 million plus post-award interest. The Circuit Court of Clinton County entered judgment confirming this class arbitration award. Like *Williams*, Smith seeks to vindicate this class action judgment through an equitable garnishment action. Because his ability to collect that judgment is predicated on his status as a class representative, as in *Williams*, this case is a "class action" under CAFA. After all, Smith himself pleads that his "claims arose out of Defendant American Detective Services' failure to obtain the necessary certifications and failure to provide copies of the reports ***to the various class members***." (Ex. A, Petition, ¶ 49).

## VII. <u>Minimal Diversity is Present</u>

28. CAFA vests district courts with diversity jurisdiction anytime there is minimal diversity—which occurs when at least one plaintiff and defendant reside in different States. *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1754 (2019). Plaintiff Smith is a citizen of Missouri. The defendants are citizens of states other than Missouri. Scottsdale is a citizen of Ohio. ADS is a citizen of North Carolina. Minimal diversity is met. Based on Plaintiff's Petition, this is not in dispute. (Ex. A, Petition, ¶¶ 1-3).

## VIII. <u>The Amount in Controversy Exceeds $5 million.</u>

29. CAFA confers federal jurisdiction over minimally diverse class actions when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs...." 28 U.S.C. § 1332(d)(2). Generally, "when a defendant seeks federal-court adjudication [by removing a case to federal court], the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin*

---

their knowledge or consent. This is set forth in detail in Scottsdale's Motion to Vacate, attached as Exhibit H. Nevertheless, the underlying judgment incorporated the arbitrator's findings—including those purportedly certifying a class—and, thus, this matter involves a "class action" under CAFA, even if the underlying class action entails clear violations of due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

*Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). However, if the plaintiff contests the defendant's allegation concerning the amount in controversy, Section 1446(c)(2)(B) requires "both sides to submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. "When a preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and there is no demand at the early stages of removal to conclusively establish damages." *Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 491 (E.D. Mo. 2020). To make this showing, the defendant may rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the amount in controversy. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017). Under this standard, removal is proper when "a fact finder *might legally conclude*" that recoverable damages meet the minimum amount in controversy. *Pirozzi v. Massage Envy Franchising, LLC*, 938 f.3D 981, 984 (8th Cir. 2019).

30. Here, the amount in controversy is met for two reasons: (1) the policy limits applicable to the underlying judgment are $5 million; and (2) post-award interest was imposed in an underlying lawsuit and, thus, may be considered for the amount in controversy. Only a single cent of interest on the underlying judgment—which the Plaintiffs seek in their petition—leads to Scottsdale meeting the amount in controversy requirement. However, as noted below, interest on a $54 million underlying judgment almost certainly will meet the amount in controversy on its own.

31. ***First***, Plaintiff Smith argues that the amount in controversy is determined solely by reference to the applicable insurance limits. (Ex. A, Petition, ¶ 5). However, Plaintiff Smith is incorrect to suggest the potentially applicable limits are only $1 million. This presumes his class action claims only implicate a single claim in a single policy period, such that only a single $1

10

million limit for a single policy period would apply. However, the underlying judgment implicates five policy periods because it encompasses claims from thousands of class members from November 2015 to October 2019. Each separate period has an applicable each claim limit of $1 million, totaling $5 million in limits.

32. "A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits". *Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion of Scalia, J.). Thus, here, the underlying class action judgment resolved not only Smith's claims, but claims many other people across five separate Scottsdale policy periods. *Williams*, *supra*, makes clear the Eighth Circuit looks to the true nature of the underlying proceeding when analyzing removal requirements, and is not fully bound by a Plaintiff's attempt write the petition in a way that avoids removal (though, as discussed below, post-judgment interest alone makes this case removable under CAFA regardless). Thus, the limits across all policy periods—$5 million in total—are at issue.

33. ***Second***, post-award interest *on the underlying judgment* of 9% per annum must be included in calculating the amount in controversy. Even if only a single limit of $1 million applied, potential interest on the underlying judgment *easily exceeds* $5 million and, thus, the amount in controversy is satisfied. And, certainly, if all five policy periods' "each claim" limits apply as discussed above, then only a tiny amount of interest on the underlying $54 million judgment would meet the minimum amount in controversy.

34. Although Section 1332(d)(2) provides the amount in controversy is "exclusive of interest and costs," it is well established that "when the subject matter of the controversy happens to be or include the costs awarded in an earlier lawsuit, they may be considered in computing the

jurisdictional amount." Wright & Miller, *Interest and Costs*, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.). Likewise, "if the judgment in one action includes interest, the amount in controversy in a suit on the judgment is measured by the amount of that first judgment, ***including the interest on it***." Id. See also *Snider v. State Farm Mut. Auto. Ins. Co.*, 360 F. Supp. 929, 931 (S.D.W. Va. 1973) ("This interest is not the interest identified in the phrase "exclusive of interest and costs" in 28 U.S.C. § 1332(a), relating to jurisdiction based on amount in controversy and diversity of citizenship. Interest on the judgment which the insurers are obligated to pay is liability imposed by law. It is a part of the total liability on which the action is based."); *Peraton Gov't Commc'ns, Inc. v. Hawaii Pac. Teleport L.P.*, No. CV 20-00287 JMS-WRP, 2021 WL 767854, at *4 (D. Haw. Feb. 26, 2021) ("the 'costs' referred to in § 1332(a) refer to prospective costs incurred during the federal litigation, not 'costs' awarded in an underlying litigation"); *Cleartrac, LLC v. Lanrick Contractors, LLC*, 432 F. Supp. 3d 648, 658 (E.D. La. 2020) ("the interest that accrues on the unpaid first judgment may be included in determining the amount in controversy" on a suit seeking to enforce the judgment."); *Perez v. Foremost Ins. Co.*, 2018 WL 2473573, at *2 (W.D.N.Y. June 4, 2018) ("[Section 1332(d)] excludes interest and costs that may be anticipated *in the federal action*."); *Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) ("The phrase 'exclusive of interest or costs' in section 1332 obviously refers to interest or costs which *might* be awarded *in connection with the federal diversity proceedings*," not underlying lawsuits).[2]

35.     Here, the underlying Clinton County judgment awarded interest of 9.0% per annum on the $54 million arbitration award, running from the date of the award itself (April 4, 2022). If the present litigation lasts 18 months from that time (which is a conservative estimate for the length

---

[2]     References to interpretations to Section 1332(a) are appropriate because both Sections 1332(a) and 1332(d)(2) use the phrase "exclusive of interest and costs." "The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986).

a matter may be litigated), interest alone would be more than $7 million. This interest is the product of the underlying lawsuit rather than potential interest that may be awarded in connection with *this* proceeding, and therefore must be included in calculating the amount in controversy. As the authorities cited above make clear, the phrase "exclusive of interest and costs" only applies to interest and costs *from <u>this</u> proceedings* because, unlike interest on the underlying judgment, interest and costs for *this case* are inherently speculative at this time. In contrast, we can easily tell what interest applies to the underlying judgment Plaintiff is seeking to vindicate (and for which he seeks interest in his petition).

36. Moreover, Plaintiff Smith acknowledges that the potentially applicable insurance proceeds include "post-judgment interest **on the judgment**". (Ex. A, Petition, ¶ 53). Plaintiff could not reasonably state otherwise. In *Allen v. Bryers*, the Missouri Supreme Court ordered an insurer to also pay post-judgment interest on the entire underlying $16 million judgment in a garnishment action seeking policy limits, like here. *Allen v. Bryers*, 512 S.W.3d 17, 40 (Mo. 2016). The court reasoned that the policy's supplementary payments provision required the insurer to pay "All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." *Id*.

37. The provision in *Allen* is *identical* to the provision in Scottsdale's policies here, which provides that Scottsdale would pay "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment." Since post-judgment interest on the underlying judgment of $54 million must be included in calculating the amount in controversy and would easily exceed $5 million, CAFA's minimum amount in controversy requirement is satisfied. This is the case even if, as Plaintiff contends, only a single $1 million "each claim" limit applies.

13

## CONCLUSION

All the elements for removal under CAFA are met. Under binding precedent in *Williams*, this is a "class action" involving more than 100 claimants. Minimal diversity is present because Plaintiff Smith has diverse citizenship from both defendants. The minimum amount in controversy is met because the underlying $54 million judgment implicates limits totaling $5 million and post-award interest on the $54 million judgment (which almost certainly will exceed $5 million alone) may be included in calculating the amount in controversy.

Respectfully submitted,

*/s/ Russell F. Watters*
Russell F. Watters, MO #25758
John F. Cooney, MO #61080
Lucas J. Ude, MO #66288
Benjamin S. McIntosh, #68248
Brown & James, P.C.
800 Market Street, Ste. 1100
Saint Louis, Missouri 63101
314-421-3400
314-421-3128 (fax)
rwatters@bjpc.com
jcooney@bjpc.com
lude@bjpc.com
bmcintosh@bjpc.com
*Attorneys for Scottsdale Insurance Company*

## CERTIFICATE OF SERVICE

       The undersigned certifies that a true and correct copy of the foregoing was served by Regular U.S. Mail and e-mail this 29th day of July 2022, on the counsel of record listed below:

Tom Hershewe
Lauren Dollar
Dollar Burns Becker & Hershewe
1100 Main Street, Suite 2600
Kansas City, MO 64105
tom@dollar-law.com
lauren@dollar-law.com
*Counsel for Defendant American Detective Services*

Jayson A. Watkins
Charles Jason Brown
Brown & Watkins, LLC
301 S. US 169 Hwy
Gower, MO 64454
watkins@brownandwatkins.com
brown@brownandwatkins.com
*Counsel for Plaintiff James Smith*

Joshua David Scott
The Law Office of Joshua Scott, LLC
1100 Main Street
Suite 2600
Kansas City, MO 64105
816-876-2600
816-221-8763 (fax)
joshua@joshuascottlaw.com
*Counsel for Defendant American Detective Services*

                                                    */s/ Russell F. Watters*

#27869786.1